## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CONAN JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-1000-W |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Conan Jackson seeks judicial review of the final decision by the Defendant Commissioner denying Mr. Jackson's application for disability insurance benefits. *See* 42 U.S.C. § 405(g). The matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record (AR). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.   Procedural History

Plaintiff filed an application for disability insurance benefits in July of 2002, alleging an inability to work since April 2, 2001, based on residual problems from foot surgery. AR

60-62; 94.[1]  Plaintiff's  application was denied initially and on reconsideration.  AR 29, 30.

Subsequently, a hearing was held before an Administrative Law Judge (ALJ), and after

consideration of the evidence, the ALJ found that Plaintiff was not disabled.  AR 13-26.  The

Appeals Council denied Plaintiff's request for review.  AR 5-7.  Therefore, the decision of

the ALJ is the final decision of the Commissioner.

## II.    The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520

and first determined that Plaintiff had not engaged in substantial gainful activity since the

alleged onset date.  AR 18, 25.  At step two, the ALJ determined that Plaintiff suffers from

severe impairments including hypertension and left foot plantar fibromatosis with residual

tarsal tunnel syndrome and possible reflex sympathetic dystrophy.  AR 20, 25.  At step three,

the ALJ found no impairment or combination of impairments that meets or equals the criteria

of any listed impairment described in the regulations.  AR 21, 25.  At step four, the ALJ

determined Plaintiff retains the residual functional capacity (RFC) to lift and/or carry a

maximum of 10 pounds; that he can stand and/or walk for 2 hours in an 8-hour workday; that

he can sit as required; that he cannot use foot controls; and that he cannot work in

temperature extremes or around hazards or at unprotected heights.  AR 23, 25.  Based on this

RFC, the ALJ determined that Plaintiff could not perform his past relevant work of "utility

_____

[1]Plaintiff had previously applied for disability insurance benefits in November of 2001.
Plaintiff's application was denied, and it appears that Plaintiff took no further action until he filed
his second application for benefits.  AR 28.

technician" because the exertional level of that occupation is rated as medium.  AR 23, 25.

Based on the testimony of a vocational expert (VE), however, the ALJ determined at step

five of the sequential evaluation process that Plaintiff could perform a significant number of

jobs that exist in the national economy and, therefore, that Plaintiff is not disabled.  AR 24-

25, 26.

### III.   **Plaintiff's Claim Raised on Appeal**

Plaintiff does not contest the ALJ's findings in steps one through four of the

sequential evaluation process and states that the ALJ adequately determined Plaintiff's

impairments and RFC.  Plaintiff claims the ALJ erred at step five of the sequential evaluation

process by relying on the testimony of the VE regarding jobs Plaintiff would be able to do.

The VE identified and described four occupations which Plaintiff could allegedly perform.

Plaintiff contends that the VE's job descriptions are inconsistent with the job descriptions in

the Dictionary of Occupational Titles (DOT).  Because Plaintiff's claim is limited to an

alleged error at step five of the sequential evaluation, analysis of Plaintiff's medical records

is not required.

### IV.   **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether

the factual findings are supported by substantial evidence in the record as a whole and

whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172

(10th Cir. 2005).  "[S]ubstantial evidence is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted). Moreover, a court is "empowered only to 'review the ALJ's decision for substantial evidence and, accordingly, [the court is] not in a position to draw factual conclusions on behalf of the ALJ.'" *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (*quoting Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001)). A court may not, therefore, "supply a missing dispositive finding under the rubric of harmless error" unless "based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145.

## V.    **Analysis**

When an ALJ reaches step five of the sequential analysis, the burden shifts to the Commissioner to show that a claimant has retained sufficient RFC to perform work in the national economy, given the claimant's age, education and work experience. *See Hackett*, 395 F.3d at 1171. The ALJ is required to make a number of findings:

> [T]he ALJ must find that the claimant retains a particular exertional capacity, decide whether the claimant has acquired transferable skills, identify specific jobs that the claimant can perform with the restrictions the ALJ has found the claimant to have, and verify that the jobs the claimant can do exist in significant numbers in the regional or national economies.

*Haddock v. Apfel*, 196 F.3d 1084, 1088-1089 (10th Cir. 1999). Each of these findings must be supported by substantial evidence. *Id.* at 1089. An ALJ need not, however, identify more than one job a claimant can do, so long as that job exists in significant numbers in the regional or national economy. *See* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy [for step-five purposes] when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant is] able to meet[.]"). *See also Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995) (To find a claimant is not disabled, the ALJ must "identify, and establish the claimant's ability to perform, some specific occupation(s) which – however few in themselves – encompass a significant number of available jobs.").

When the testimony of a VE regarding the requirements of a particular job is at odds with the description of the requirements for that job listed in the DOT, the testimony of the VE cannot be considered "substantial evidence." In *Haddock*, the ALJ found the plaintiff to retain an RFC for sedentary work. Of the four jobs "summarily identified" by the VE, only one – that of payroll clerk – is described in the DOT as sedentary. The ALJ compounded the error by failing to ask the VE to specify how many payroll clerk jobs exist. *Id.* The Tenth Circuit reversed and remanded the case because the ALJ's step five determinations were not supported by substantial evidence. The Tenth Circuit noted that "the

agency accepts the [DOT's] definitions as reliable evidence at step four of the 'functional demands and job duties' of a claimants's past job[.]" *Id.* at 1090.  For this reason, the Court found that "[i]t would be anomalous to read the agency's regulations to allow an ALJ to disregard the [DOT] at step five – where the ALJ bears the burden – when the ALJ is allowed to rely conclusively on essentially the same information from the [DOT] at step four." *Id.* The court held, therefore, that "the ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.* at 1091. *See also* SSR 00-4p, 2000 WL 1898704 at *4 (explaining that "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT").

Plaintiff contends the ALJ in this case erred at step five of the sequential evaluation process because the jobs identified by the VE either require an exertional level greater than that for sedentary work or have a specific vocational preparation (SVP) requirement above "semi-skilled."[2]

---

[2]In this case, the ALJ did ask the VE if she had described the jobs differently from the way they are described in the DOT.  AR 327.  Although the VE answered "No," AR 328, that answer is incorrect.  Nevertheless, the Commissioner argues that the ALJ fulfilled her investigative obligation simply by asking the VE, "And have you described the jobs differently from the way they're described in The Dictionary of Occupational Titles?"  According to the Commissioner, the VE's negative answer to this question ended the matter.  This Court cannot, however, accept the Commissioner's reasoning that "expert" testimony constitutes substantial evidence, even when the
(continued...)

Plaintiff testified at the hearing before the ALJ that he had worked for Shaklee for twenty-one years before he had to quit because of problems with his feet.  AR 304.  He identified his position as that of "pharmaceutical technician" and describes his job responsibilities as follows:

> I was in the weigh/blend team that weigh and blend active ingredients for vitamins and Tylenol – and that process, weighing and blending.
> . . .
>
> Pretty much the – from receiving the wrong pills to sending the finished products out.  I did every job.

AR 304-305.  The VE identified Plaintiff's past relevant work as "utility technician" which she described as "medium, skilled work."  AR 326.  Neither the VE nor the ALJ stated the DOT number for this job.  It appears, however, that a more accurate job title from the DOT is that of "Pharmaceutical Operator," listed at 559.382-042 and described as follows:

> Controls equipment and tends machines to produce variety of pharmaceutical and toilet products or ingredients, performing any combination of following duties: Weighs and measures out coating ingredients and coats medicinal tablets [COATER (pharmaceut.) 554.382-010].  Tends mixing machine and heated kettles to prepare specified ingredients for ointments, creams, liquid medications, powders, gums, and similar drug products, adding ingredients according to formulas [COMPOUNDER (pharmaceut.; soap & rel.) 550.685-046].  Tends milling and grinding machines that reduce mixtures to designated sized particles, or grinds materials with mortar and pestle.  Prepares granulated products [GRANULATOR-MACHINE OPERATOR (pharmaceut.) 559.382-026].  Tends filter presses, sifting machines, autoclaves, water stills,

---

[2](...continued)
expert is wrong.  The Commissioner further contends that it was Plaintiff's responsibility to point out the discrepancies between the DOT and the VE's testimony at the hearing.  Such reasoning, if accepted, would have the effect of shifting at least part of the burden of proof at step five of the sequential analysis from the Commissioner to the claimant.

and related equipment to prepare ingredients for further processing. Operates machine to compress ingredients into tablets [COMPRESSOR (elec. equip.; pharmaceut.) 556.682-022]. Inspects, weighs, and tests hardness of tablets [TABLET TESTER (pharmaceut.) 559.667-010]. May be designated according to substance prepared as Liquid Compounder (pharmaceut.).

*See Dictionary of Occupational Titles* (DOT) (4th ed. 1991) § 559.382-042. This job is classified as medium, and the SVP is 5, making it "skilled" work.[3] The ALJ's RFC precludes Plaintiff from returning to his past relevant work:

Accordingly, the Administrative Law Judge finds that the claimant retains the residual functional capacity to lift and/or carry a maximum ten pounds. He can stand and/or walk for two hours in an eight-hour work day. He can sit as required. He cannot use foot controls. He cannot work in temperature extremes or around hazards or at unprotected heights.

AR 23.[4] Based on the testimony of the VE, the ALJ further found that Plaintiff has transferable skills from his past relevant work:

[Plaintiff] has transferable skills from skilled work previously performed. The impartial vocational expert testified that the claimant has acquired the transferable skills in operating machinery, in shipping and receiving, in inventory control, and in scheduling work procedures. These skills transfer to jobs within the stated residual functional capacity. The Administrative Law

---

[3]The Agency has explained how the skill levels outlined in 20 C.F.R. § 404.1568 correspond to the SVP numbers used by the DOT. An SVP from 1-2 corresponds with "unskilled work" in the regulations. An SVP of 3-4 corresponds with "semi-skilled work." An SVP of 5-9 corresponds to "skilled work." *See* SSR 00-4p, 2000 WL 1898704 at *3.

[4]In other words, the ALJ found that Plaintiff is limited to sedentary work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567 (a).

Judge concurs with the testimony of the vocational expert and finds the claimant has the aforementioned transferable skills.

AR 24.

Based on the ALJ's hypothetical question,[5] the VE concluded that such a person would have transferable skills and be able to perform the following jobs: (1) shipping and receiving clerk, which the VE described as a sedentary, semi-skilled occupation; (2) stock and inventory clerk, which the VE described as a sedentary, semi-skilled occupation; (3) production coordinator, not further identified by the VE; and (4) expediter, not further identified by the VE.  AR 327.

In her decision, the ALJ relied upon the VE's testimony and found that Plaintiff could perform the jobs identified by the VE, all of which she described as sedentary, semi-skilled occupations.  AR 24.  In the Findings section of her decision, the ALJ stated:

> The claimant has transferable skills in operating machinery, in shipping and receiving, in inventory control, and in scheduling work procedures, which transfer to other sedentary *semiskilled* work (20 C.F.R. §404.1568).

AR 26 (emphasis added).

Plaintiff challenges each of the jobs identified by the ALJ because for each job, either the strength requirement or the skill level was misidentified.

---

[5]"[P]resume an individual of the same age, education, work experience as that of the Claimant.  Presume that the individual could lift or carry a maximum of 10 pounds.  The individual would be limited to two hours in a workday standing and walking – standing and/or walking.  The individual could sit as needed, but would not be able to use foot controls."  AR 326.  Plaintiff has not objected to the ALJ's RFC nor to her hypothetical question.

1.      **Shipping and Receiving Clerk**

Plaintiff refers the Court to the job listing at § 222.387-050 of the DOT, Shipping and Receiving Clerk. *See Dictionary of Occupational Titles* (DOT) (4th ed. 1991) § 222.387-050. Plaintiff states that this job exceeds the exertional restrictions found by the ALJ. He is correct. The DOT rates the strength requirement for this occupation as "medium," clearly above the RFC's restriction to sedentary work. This job does not, therefore, support the ALJ's step-five decision and cannot be considered when determining whether there is a significant number of jobs in the economy that Plaintiff could perform.

2.      **Stock and Inventory Clerk**

Plaintiff states that the job of "stock and inventory clerk" also exceeds the exertional restrictions established by the ALJ in Plaintiff's RFC. Plaintiff refers the Court to the job listing at § 222.387.034 of the DOT, Material Clerk, Stock-Record Clerk. Again, Plaintiff is correct. The DOT states that the strength requirement for this job is "light," also beyond Plaintiff's sedentary exertional level restriction as determined by the ALJ. The discrepancy between the exertional level of this occupation and Plaintiff's RFC disqualifies this job, too, from step-five consideration.[6]

---

[6]The Commissioner contends that the VE's testimony does not necessarily conflict with the information in the DOT because strength levels in the DOT represent the maximum level of strength required for a job. Arguably, the Commissioner contends, "there could reasonably exist shipping and receiving clerk jobs and stock and inventory clerk jobs that are actually performed at the sedentary level." Brief in Support of the Commissioner's Decision at 5. Perhaps there are such jobs. But none was identified by the VE, and this Court cannot engage in "*post hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the
(continued...)

### 3.      Production Coordinator; Expediter

The occupation of "Production Coordinator" is listed in the DOT at § 221.167-018. "Expediter" is listed at § 222.367-018.  Each of these jobs is classified as sedentary, and each job has an SVP of 6, corresponding to skilled work.  Plaintiff challenges the ALJ's reliance on these sedentary jobs because the ALJ referred to them as "semi-skilled" instead of skilled and because she stated that Plaintiff had acquired skills in his past job "which transfer to other sedentary, semiskilled work."  AR 24, 26.

Although the VE and the ALJ incorrectly identified the skill level required to perform these two occupations, the Commissioner argues that the ALJ simply "misstated" the skill category.[7]  The VE testified that Plaintiff has transferrable skills from his past relevant work including "[t]he ability to operate machinery, knowledge and familiarity with shipping and receiving procedures . . . [t]he ability to perform inventory and keep inventory records [and] [t]he ability to schedule work procedures and materials."  AR 326.  The Commissioner also states, "Plaintiff has failed to show that these skills he obtained in his prior work are inconsistent with the requirements of the jobs as listed in the DOT."  Brief in Support of Commissioner's Decision at 5.  Again the Commissioner asks this Court to shift part of the

---

[6](...continued)
Commissioner's decision itself."  *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). Moreover, the VE gave no explanation for the discrepancy between her testimony and information in the DOT as required by *Haddock*, 196 F.3d at 1091, and in fact, the VE erroneously testified that there was no discrepancy between her testimony and information in the DOT.

[7]Plaintiff's past relevant work carries an SVP of 5.  The two remaining jobs carry an SVP of 6.

11

step-five burden of proof from the Commissioner to the Plaintiff.  It is not Plaintiff's burden to prove that he does not have transferable skills; it is the burden of the ALJ to show that he does have such skills and that those skills are truly transferable to other occupations in an appropriate skill category.  Moreover, this Court cannot state conclusively that the ALJ would have found these skills transferable to skilled occupations as well as semi-skilled occupations.

The Commissioner further states that, although the ALJ used the Medical-Vocational Rules (grids) 201.29 (for younger individuals 18-44) and 201.22 (for younger individuals 45-49) only as a "framework," she could have applied these Rules directly to reach the conclusion that Plaintiff is not disabled.[8]  Application of the grids would have obviated the necessity of finding that Plaintiff could perform a job or jobs which exist in significant numbers in the national economy.  In effect, the Commissioner is inviting this Court to "supply a missing dispositive finding under the rubric of harmless error," an action the Tenth Circuit Court of Appeals has strongly cautioned district courts not to take.  *See Allen*, 357 F.3d at 1145.

---

[8]This Court recognizes, however, that a sedentary RFC already "represents a significantly restricted range of work."  SSR 96-9p, 1996 WL 374185, at *3.  Thus, the Commissioner's guidelines not only exclude the grids if there is "more than a slight impact on the individual's ability to perform the full range of sedentary work," they affirmatively recognize that "a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." *Id.* at *3, *5.  On remand, the Commissioner must determine whether the full range of sedentary work is significantly eroded by the other limitations found by the ALJ.

In *Allen*, the Tenth Circuit reviewed relevant cases in which an ALJ's decision was affirmed despite the existence of error because the error was found to be  harmless.  The Court stated, however, "[O]ne significant thing this heterogeneous group of cases has in common is that in none of them did this court hold an ALJ's failure to make a dispositive finding of fact harmless on the basis that the missing fact was clearly established in the record[.]" *Id.*  The Court went on to say that if a court could ever properly supply a missing dispositive fact under a harmless error analysis, the court would have to be able to confidently say that "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Id.*  Given the generally inaccurate and unreliable testimony of the VE in this case coupled with the ALJ's obvious decision not to apply the grids, this Court cannot conclusively supply the missing dispositive finding (*i.e.*, application of the grids for a finding of not disabled), determine with confidence that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way, and affirm the decision of the ALJ on a harmless error analysis.  It is therefore recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by June 15th, 2006. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this 26th day of May, 2006.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE